**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Gallagher, a single person,<br><br>Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A., a foreign corporation; ABC Corporations, XZY Partnerships, and John and Jane Does I-X,<br><br>Defendants. | No. CV17-1879-PHX-DGC<br><br>**ORDER** |

Plaintiff Edward Gallagher moves to remand this case to state court. Doc. 19. Defendant Wells Fargo Bank opposes remand and moves to dismiss Plaintiff's second amended complaint pursuant to Rule 12(b)(6). Doc. 23. The motions are fully briefed and no party has requested oral argument. For reasons stated below, the Court will deny the motion to remand and grant the motion to dismiss in part.

**I.      Background.**

Gallagher filed suit in Arizona state court against his mortgage lender, Wells Fargo, alleging that it wrongfully handled two property insurance claims and instituted foreclosure proceedings. Doc. 1-1 ¶¶ 15-40. The original complaint alleges six causes of action: conversion, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and intentional misrepresentation. Doc. 1-1. The complaint also seeks an injunction preventing Wells Fargo from holding the scheduled trustee sale. *Id.* Since removal, the parties have

stipulated to withdrawal of the injunctive relief claims and Gallagher has filed first and second amended complaints. *See* Docs. 11, 13, 18.

**II.   Motion to Remand.**

Any civil action over which the federal district courts have original jurisdiction may be removed from state court to the federal court for the district where the action is pending. 28 U.S.C. § 1441(a). Courts strictly construe the statute against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Indeed, there is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* This strong presumption "means that the defendant always has the burden of establishing that removal is proper." *Id.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Court has jurisdiction over cases in which the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Gallagher argues that the amount in controversy requirement is not satisfied in this case. Doc. 19 at 2.[1]

The original complaint does not allege an amount in controversy. Rather, it requests "compensatory damages in an amount to be proven at trial," punitive damages "sufficient to deter Wells Fargo from engaging in such conduct in the future," an injunction preventing the trustee sale, attorney's fees, and "other relief that the Court deems just and proper." Doc. 1-1 at 12-13. Gallagher certified in the state court action that he was seeking more than $50,000, the compulsory arbitration threshold. Doc. 1-3 at 2.

---

[1] Throughout its response, Wells Fargo refers to information in Gallagher's first and second amended complaints filed after removal, but "post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006). Wells Fargo cites no authority to support its position that the Court should consider the amendments because they "merely clarify" the original complaint (Doc. 24 at 6), and Gallagher disputes this characterization (Doc. 25 at 6). The Court will consider only the original complaint in determining whether the case was properly removed.

- 2 -

Wells Fargo "bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [$75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Wells Fargo's notice of removal asserts that "Plaintiff seeks an order permanently enjoining the trustee's sale of real property believed to be valued in excess of $250,000 and which secures a loan with a remaining unpaid balance in excess of $132,000," and that "Plaintiff further seeks unspecified compensatory damages, punitive damages, and attorney's fees." Doc. 1 ¶ 8.

Wells Fargo contends that because the original complaint seeks a permanent injunction preventing sale of the property, the loan balance or property value – which both exceed $75,000 – are appropriate measures of damages. Doc. 24 at 9-11. Gallagher does not dispute that the property value and loan amount exceed $75,000, but argues that these are not relevant measures of damages because the complaint seeks only a temporary injunction to allow litigation of his compensatory claims and does not seek rescission of the loan. Doc. 19 at 4-7.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). Gallagher concedes that generally the object of a lawsuit brought to enjoin a bank from selling property is that property. Doc. 19 at 3 (citing *Lee v. Wells Fargo Bank, N.A.*, 2015 WL 5618869, at *5 (C.D. Cal. Sep. 24, 2015); *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973)). But he argues that this case is an exception because it was not brought for the primary purpose of enjoining foreclosure. Doc. 19 at 4-7. Rather, Gallagher claims, the focus of the case is monetary damages for wrongful conduct. *Id.* The Court disagrees.

Gallagher brought this case just four days before the scheduled trustee sale of his property. The complaint asserts within the first two pages that Gallagher's "property is the subject matter of this claim." Doc. 1-1 ¶ 8. It alleges that as "a direct and proximate result of Wells Fargo's" conduct, Gallagher "has suffered or will suffer from the loss of

[$20,842] and his home." *Id.* ¶ 57. It alleges that Wells Fargo intentionally withheld insurance proceeds so that Gallagher would be unable to repay the loan and Wells Fargo could sell the property. *Id.* ¶ 64. And it requests "temporary, preliminary and permanent injunctive relief." *Id.* ¶¶ 47, 50. Gallagher brought suit primarily to prevent foreclosure, which fairly puts at least the remaining loan balance, if not the value of the property, in issue. Wells Fargo has met its burden of showing that the amount in controversy exceeds $75,000.

**III. Motion to Dismiss.**

Defendant moves to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). Doc. 23. For purposes of ruling on the motion, the SAC's factual allegations must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Gallagher's real property is located in Glendale, Arizona, and is subject to a deed of trust securing repayment of a loan from Wells Fargo. Doc. 18 ¶ 5. Gallagher and his wife originally purchased the property in 1978, but Gallagher refinanced the property in 2008. *Id.* ¶¶ 9-11. Gallagher has AAA hazard insurance coverage on the property. *Id.* ¶ 12. With respect to this coverage, the deed of trust between Gallagher and Wells Fargo states:

> All or part of the Insurance proceeds may be applied by Lender, at its option, either, (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property.

*Id.* ¶ 45. The SAC alleges that Gallagher was harmed by Wells Fargo's conduct regarding three separate transactions: a 2010 property insurance claim, a 2015 property insurance claim, and a failed loan modification. The Court will summarize the relevant facts of each transaction.

In 2010, Gallagher's property was damaged by a hail storm and AAA approved a claim for $69,229.54. *Id.* ¶¶ 14-15. Gallagher hired a contractor to perform the repairs. *Id.* ¶ 16. The contractor moved out of state, leaving $16,000 to $19,000 of work

unfinished. *Id.* ¶¶ 19-20. Gallagher requested that Wells Fargo disburse $51,127.22 for the work that was completed. *Id.* ¶ 18. Wells Fargo paid this amount to the contractor, and then paid the contractor an additional $16,288.97 in June 2013 without completing an inspection of the property or obtaining Gallagher's approval. *Id.* ¶¶ 21-28. Gallagher was out of town and ill for "many months" during this time and therefore was not available to verify the repairs. *Id.* ¶ 23. Months after the checks were sent to the contractor, Gallagher contacted Wells Fargo to inquire about the claim. *Id.* ¶ 26. Wells Fargo indicated that the "final check" was applied to Gallagher's account, referring to the remaining $1,950. *Id.* ¶¶ 27-28. Wells Fargo did not mention the $16,288.97 check sent to the contractor – of which Gallagher was unaware. *Id.* ¶ 29.

In February 2016, Gallagher was conditionally approved for a loan modification that would have reduced his monthly payments by $291.11. *Id.* ¶¶ 30-31. Believing, however, that Wells Fargo owed him thousands of dollars from the 2010 claim, Gallagher refused to sign the modification agreement unless Wells Fargo turned over certain documents relating to the 2010 claim. *Id.* ¶¶ 32, 35. Wells Fargo turned over some but not all of the documents, and Gallagher refused to sign the modification agreement. *Id.* ¶¶ 34, 36.

In April 2016, Gallagher filed another claim with AAA related to a hail storm that occurred in October 2015. *Id.* ¶ 27; Doc. 1-1 ¶ 37. AAA approved a claim for $28,412.83 (with an actual cash value of $20,968.64). Doc. 18 ¶ 38. In August 2016, AAA issued a $19,653.33 check to Gallagher, but he did not send the check to Wells Fargo until February 27, 2017. *Id.* ¶ 39, 41. Meanwhile, on February 9, 2017, Wells Fargo denied the loan modification because Gallagher refused to sign it, and on February 15, 2017, Wells Fargo began foreclosure proceedings. *Id.* ¶¶ 34, 36, 40. The first AAA check (sent by Gallagher on February 27) had expired by the time it reached Wells Fargo, and AAA issued a new check for $20,342 on March 16, 2017. *Id.* ¶¶ 42, 44. On March 3, 2017 – between issuance of the two checks – Gallagher contracted with Atlas Construction Group to perform the repairs. *Id.* ¶ 43.

On April 10, 2017, Gallagher contacted Wells Fargo to ask why it had not released the repair funds. *Id.* ¶ 46. Wells Fargo responded that the funds would be applied to the cost of foreclosing on his property. *Id.* ¶ 47. Gallagher stated that he wished to make the repairs, but Wells Fargo responded that he would need to "improve loan status" before it would release the funds. *Id.* ¶¶ 48-49. Wells Fargo requested documents from Atlas, which Atlas provided. *Id.* ¶ 50. On April 27, 2017, Wells Fargo informed Atlas that it would overnight a check to Gallagher to fund the repairs, but Wells Fargo's internal notes indicated that it would not send the check. *Id.* ¶¶ 51-52. Wells Fargo never released the repair funds. As a result, the repairs cannot be completed and Gallagher cannot receive an $8,070.83 depreciation payment from AAA. *Id.* ¶¶ 54-56. Gallagher was unable to pay Atlas, and Atlas is seeking a judgment against Gallagher for its overhead and profit in the amount of $4,420.80. *Id.* ¶ 57.

As of April 17, 2017, Gallagher was over one year behind on his loan payments and his redemption amount was $20,693.89. *Id.* ¶ 58; Doc. 18-2 at 9-10. The property was scheduled to be sold at auction on May 23, 2017, but Wells Fargo cancelled the sale and elected to apply the 2015 insurance proceeds to Gallagher's account on July 20, 2017. Doc. 18 ¶¶ 53, 60-61. As a result of Wells Fargo's conduct with respect to the 2010 claim, the failed loan modification, and the 2015 claim, Gallagher has become "severely weak" and "bed-ridden." *Id.* ¶ 59. The SAC asserts four causes of action based on these facts: negligence, breach of contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. Doc. 18.

**A.  Legal Standard.**

A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**B.  Discussion.**

**1.  Negligence.**

An Arizona negligence claim requires that a plaintiff show: (1) defendant had a duty, (2) defendant breached that duty, (3) a causal connection between defendant's breach and the resulting injury, and (4) actual damages. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The SAC alleges that "Wells Fargo had a duty to apply the insurance funds according to their deed of trust"; "Wells Fargo was required to either apply proceeds to Gallagher's account or to the repairs"; and "Wells Fargo breached their duty by not making an election." Doc. 18 ¶¶ 63-66. Wells Fargo argues that Gallagher's negligence claim is barred by the economic loss rule and fails to allege breach and causally connected damages. Doc. 23 at 5.

Plaintiff's response does not address any of Wells Fargo's arguments regarding the negligence claim. *See* Doc. 26. When a party fails to file a response, the Court may deem the party to have consented to granting the motion. *See* LRCiv. 7.2(i). The Court is "not obligated to search for legal theories not clearly laid out in Plaintiff's response to the motion or in his amended complaint." *Mansour v. Cal-W. Reconveyance Corp.*, No. CV-09-37-PHX-DGC, 2009 WL 2132695, at *3 (D. Ariz. July 15, 2009). Gallagher's failure to respond to Wells Fargo's negligence arguments provides sufficient reason for the Court to grant the motion with respect to his negligence claim.

The Court also finds Wells Fargo's arguments well-taken. Gallagher has failed to plead any damages caused by its allegedly negligent conduct. Doc. 23 at 7-8. The SAC identifies the following damages: approximately $5,000 that Gallagher owes Atlas, lost depreciation from the 2015 insurance claim, "serious emotional distress," and "adverse

effects" to Gallagher's property. Doc. 18 ¶¶ 67-70. But any judgment that Atlas seeks from Gallagher is not a result of Wells Fargo's conduct – Gallagher entered into the contract with Atlas voluntarily and before he knew whether Wells Fargo would elect to use the insurance proceeds for the repairs. Additionally, Gallagher was not entitled to the alleged lost depreciation; depreciation was to be paid if the repairs were performed, but Wells Fargo could elect not to perform the repairs. *See* Doc. 23 at 8. And negligent infliction of emotional distress is not actionable in Arizona without an allegation of accompanying physical injury, which Gallagher does not make. *See Gau v. Smitty's Super Valu, Inc.*, 901 P.2d 455, 457 (Ariz. Ct. App. 1995). Finally, the Court will not speculate as to the meaning of unspecified "adverse effects." The Court will grant the motion with respect to Gallagher's negligence claim.

### 2. **Breach of Contract.**

To plead a breach of contract claim, a plaintiff must identify a contract, breach, and damages. *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs.*, 423 P.2d 124, 126 (Ariz. Ct. App. 1967). The SAC alleges two separate breaches. First, it alleges that Wells Fargo breached the deed of trust by failing to make an election regarding the 2015 insurance proceeds "in a reasonable time as required." Doc. 18 ¶ 79. Second, it alleges that Wells Fargo breached "agreements to provide a loan modification" by refusing to provide the documents Gallagher requested. *Id.* ¶¶ 75-78. As a result of these injuries, Gallagher alleges he suffered "irreparable injury." *Id.* ¶ 83.

Wells Fargo contends that the SAC fails to state a claim because the deed of trust does not require it to make an election within any specified timeframe, nor does it require Wells Fargo to provide a loan modification or requested documents. Doc. 23 at 8-11. Wells Fargo also argues that Gallagher cannot maintain a claim for breach because he was in default prior to Wells Fargo's alleged breaches. *Id.* Again, Gallagher does not respond to any of these arguments. *See* Doc. 26 at 5-6.

The Court agrees that the SAC fails to plead facts sufficient to support a breach of contract claim. The only contract Gallagher identifies is the deed of trust, which contains

1  no time requirement for elections and no requirement that Wells Fargo provide a loan
2  modification or documents upon request.

3  Gallagher's response suggests a third breach based on Wells Fargo's conduct surrounding the 2010 insurance claim. Doc. 26 at 6. This claim is not pled in the SAC, and even if it were, Gallagher has not identified a contractual provision that was breached or how Wells Fargo breached it by its 2010 conduct. The motion to dismiss will be granted with respect to Gallagher's breach of contract claims.

### 3. Breach of Fiduciary Duty.

Wells Fargo argues that the SAC fails to state a claim for breach of fiduciary duty because there was no fiduciary relationship. Doc. 23 at 11-23. Gallagher responds that Wells Fargo assumed a fiduciary duty by agreeing to "serve as a custodian/trustee" of insurance proceeds under Gallagher's policy with AAA. Doc. 26 at 7. To support his argument, Gallagher relies on the insurance covenant in the deed of trust and a loan statement from April 2017, which indicates that the 2015 insurance claim proceeds were being held in a "restricted escrow" account. *Id.*; Doc. 18-2 at 9.[2]

"A fiduciary relationship is a confidential relationship whose attributes include great intimacy, disclosure of secrets, [or] intrusting of power." *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. Ct. App. 1996), *as corrected on denial of reconsideration* (Jan. 13, 1997) (quotation marks and citations omitted). "It is well settled in Arizona that the relationship between a Bank and an ordinary depositor, absent any special agreement, is that of debtor and creditor." *McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992) (quotations marks and citations omitted); *see also Glava v. JPMorgan Chase Bank, N.A.*, No. 1 CA-CV 13-0719,

---

[2] The Court considers the deed of trust because the SAC refers to it repeatedly, it is central to Gallagher's claims, and Gallagher has not questioned the authenticity of the copy submitted with Wells Fargo's motion. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). Moreover, Gallagher does not object to the Court's consideration of the document, and in fact refers to it throughout his response. *See* Doc. 26 at 1-2, 7-8, 11.

- 9 -

2015 WL 849685, at *5 (Ariz. Ct. App. Feb. 26, 2015) ("In Arizona, absent a special agreement, a debtor/creditor relationship does not create a fiduciary relationship.").

Gallagher cites no case to support his theory that a bank becomes a fiduciary simply by holding certain funds in an escrow account.[3] Moreover, the deed of trust makes clear that Wells Fargo was not, as Gallagher asserts, holding the proceeds for Gallagher's "sole benefit." *See* Doc. 26 at 8. The deed of trust required Gallagher to obtain hazard insurance that would be "held by" and "include loss payable clauses in favor of" Wells Fargo. Doc. 23-1 at 4. Gallagher agreed that any insurance proceeds would be paid directly to Wells Fargo, and that Wells Fargo could, in its discretion, apply the proceeds to his indebtedness or to repair the property. *Id.* Finally, Gallagher agreed that in the event of foreclosure or transfer of the property, the rights to the insurance policies would pass to the purchaser. *Id.* These provisions make clear that Wells Fargo's purpose in holding the insurance proceeds was to protect its own interest. Wells Fargo did not hold itself out as a "neutral conduit of funds." *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST ANX, 2012 WL 7051318, at *8 (C.D. Cal. Dec. 20, 2012). Gallagher has not pled facts suggesting there was a special, confidential relationship other than the ordinary borrower-lender relationship. Thus, Gallagher has not alleged facts showing that Wells Fargo had a fiduciary duty.

### 4. Implied Covenant of Good Faith and Fair Dealing.

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). The implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* The implied terms of the covenant are as much a part of the contract as the express terms, but they cannot directly contradict those express

---

[3] The only Arizona case cited by Gallagher in this portion of his argument concerns disputes between an estate's beneficiaries and the trustees and representatives of the estate, not banking relationships. Doc. 26 at 8 (citing *Tovrea v. Nolan*, 875 P.2d 144, 146 (Ariz. Ct. App. 1993)).

- 10 -

terms. *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. 2004); *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. 2002). "Thus, Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp.*, 46 P.3d at 435; *accord Ariz. Laborers*, 38 P.3d at 30 ("[i]nstances inevitably arise where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain.") (citation omitted). To determine the parties' reasonable expectations, "the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986) (quotation marks and citation omitted); *Bike Fashion Corp.*, 46 P.3d at 435 ("the express terms are presumed to be the best indicator of the parties' reasonable expectations").

The SAC alleges that Wells Fargo owed a duty of good faith and fair dealing pursuant to the deed of trust, and breached that duty with respect to (1) the 2010 insurance claim by failing to obtain an inspection or Gallagher's approval for the repairs and misleading Gallagher about the final check, (2) the 2015 insurance claim by unreasonably delaying its election, and (3) the loan modification by not disclosing the information Gallagher requested. Doc. 18 ¶¶ 104-09, 113-17.

### a. Tortious Breach of the Implied Covenant.

A plaintiff may sue for breach of the implied covenant in contract or tort. *Rawlings*, 726 P.2d at 574. To bring a tortious implied covenant claim, the parties must have a "special relationship . . . arising from elements of public interest, adhesion, and fiduciary responsibility." *Ariz. Laborers*, 38 P.3d at 29 (quoting *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 721 (Ariz. 1991)). As explained above, Gallagher has not alleged facts or cited precedent to establish a fiduciary relationship in this case. Nor has Gallagher alleged a contract of adhesion or unequal bargaining power that would give rise

to a special relationship. *See Wilson v. PNC Mortg.*, No. 1 CA-CV 14-0024, 2015 WL 448601, at *9 (Ariz. Ct. App. Feb. 3, 2015), *review denied* (Sept. 22, 2015) (citing *McAlister*, 829 P.2d at 1259, and finding no special relationship between mortgagor and mortgagee because "a mere difference in bargaining power without more does not establish a special relationship between parties"). To the extent Gallagher alleges tortious breach of the implied covenant, the claim will be dismissed.

### b. 2010 Insurance Claim.

Wells Fargo argues that Gallagher cannot state a claim based on the 2010 insurance proceeds because the statute of limitations has run. Doc. 23 at 4. With respect to the 2010 claim, Gallagher alleges that Wells Fargo sent the final disputed check to the contractor on June 28, 2013, and misled Gallagher when he called to inquire about the claim "months later." Doc. 18 ¶¶ 24, 26. Wells Fargo asserts that the statute of limitations for breach of the implied covenant of good faith and fair dealing is two years. Doc. 23 at 4 (citing *Serrano v. Serrano*, No. 1 CA-CV 10-0649, 2012 WL 75639, at *6 (Ariz. Ct. App. Jan. 10, 2012)). Gallagher argues that the discovery rule applies, tolling the statute of limitations until he discovered the final check in August 2017. Doc. 26 at 6; *see Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995) ("Under the 'discovery rule,' a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause.").

Wells Fargo replies that "it is simply not plausible that Plaintiff was not aware of the fact that Wells Fargo did not reduce his loan balance by the disputed amount." Doc. 29 at 3. But a motion to dismiss on statute of limitations grounds may be granted only when the running of the statute is apparent on the face of the complaint, and "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) ("Because the applicability of the

equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion.") (citations and quotation marks omitted). The SAC's allegations do not preclude Gallagher from proving that the statute of limitations should be tolled due to Wells Fargo's actions of concealment.

Gallagher also argues that his claim is within the "seven year statute of limitations for breach." Doc. 26 at 6. Gallagher does not identify any authority for this seven-year limitation, but the Court notes that the six-year statute of limitations applicable to contract actions under A.R.S. § 12-548 may apply to Gallagher's claim rather than the two-year tort limitation suggested by Wells Fargo. *See Ariz. Laborers*, 38 P.3d at 29 (explaining that implied covenant claims in Arizona are contractual unless a special relationship exists); *see also Gust, Rosenfeld & Henderson*, 898 P.2d at 968 ("The defense of statute of limitations is never favored by the courts, and if there is doubt as to which of two limitations periods should apply, courts generally apply the longer.").

In either case, Gallagher has stated a claim for breach of the implied covenant of good faith and fair dealing based on Wells Fargo's handling of the 2010 insurance claim.[4]

### c. 2015 Insurance Claim.

Wells Fargo contends that its delay in making an election for the 2015 insurance proceeds cannot support a claim because its actions were specifically authorized by the deed of trust. Doc. 23 at 13-14. The deed of trust grants Wells Fargo discretion to apply insurance proceeds either to Gallagher's indebtedness or the cost of repairs, but does not identify a time within which Wells Fargo must make an election. Gallagher alleges that, by delaying its decision for three months, Wells Fargo "exercised express discretion in a way inconsistent with his reasonable expectations." *Bike Fashion Corp.*, 46 P.3d at 435. The SAC alleges that Wells Fargo intentionally held the proceeds "that would have redeemed Mr. Gallagher" to ensure that he would not be able to afford the large redemption amount. Doc. 18 ¶ 115. Gallagher's response also asserts that Wells Fargo's

---

[4] Wells Fargo's only argument for dismissal of the claim based on the 2010 insurance proceeds is that it is time-barred. *See* Doc. 23 at 4-5; Doc. 29 at 2-3. Wells Fargo does not assert any substantive deficiency.

delay and handling of the 2015 claim denied him the expected "protection, security and peace of mind that come from having the mortgagee manage the funds and prevent the economic consequences of catastrophe." Doc. 26 at 10. Although Wells Fargo ultimately applied the proceeds to his loan balance, the delay allegedly caused Gallagher to incur additional interest and fees. Doc. 18 at 12-13. These allegations are sufficient to state a claim for breach of the implied covenant based on Wells Fargo's handling of the 2015 insurance proceeds.

### d. Loan Modification.

The SAC alleges that because Wells Fargo refused to disclose the documents he requested, Gallagher was denied a loan modification and defaulted on his loan. Doc. 18 ¶¶ 108-11. Wells Fargo argues that these allegations cannot support a claim because loan modification was not a reasonably expected benefit of the deed of trust. Doc. 23 at 13. The Court agrees that the deed of trust contains no indication that loan modification was an expected benefit. Thus, Gallagher cannot allege a claim for breach of the implied covenant based on Wells Fargo's denial of the modification. *See Weisman v. Capital One NA*, No. CV-15-00657-PHX-GMS, 2016 WL 558416, at *3 (D. Ariz. Feb. 12, 2016) ("[A]bsent factual allegations that the underlying agreement envisioned loan modification as a benefit, Defendant could not have breached a duty of good faith and fair dealing on that subject because it owed Plaintiffs no duty to negotiate their loan modification requests.").

As to Gallagher's argument that Wells Fargo breached the implied covenant by refusing to produce documents he requested, Gallagher has pointed to nothing in the deed of trust to suggest that Wells Fargo was obligated to produce, in connection with an unrelated loan modification, documents from an insurance claim from years earlier. And even if such benefit could be implied, Gallagher fails to allege any damages logically flowing from Wells Fargo's failure to produce the documents. The loan modification was denied because Gallagher, by his own choice, refused to sign it. Gallagher's claim for

breach of the implied covenant based on Wells Fargo's refusal to turn over the documents will be dismissed.

**IT IS ORDERED**:

1. Plaintiff's motion to remand (Doc. 19) is **denied**.

2. Defendant's motion to dismiss (Doc. 23) is **granted in part** and **denied in part**. The motion is denied with respect to Plaintiff's claims for contractual breach of the implied covenant of good faith and fair dealing arising out of the 2010 and 2015 insurance claims, and granted in all other respects.

3. The deadlines set forth in the case management order (Doc. 20) remain in effect.

Dated this 27th day of November, 2017.

_____
David G. Campbell
United States District Judge